STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ESTEBAN DUQUE AVILES, DEFENDANT-APPELLANT.

Decided June 30, 1965.

*Mr. Paul R. Kramer* argued the cause for the appellant.

*Mr. Martin J. Queenan,* Prosecutor of Burlington County, argued the cause for the respondent.

The opinion of the court was delivered

Per Curiam. A Burlington County jury found the defendant guilty of second degree murder. He appealed to this Court as of right. *R. R.* 1:2–1(c).

The State's proof showed that on November 3, 1955, between 5:00 and 6:00 P. M., the defendant shot and killed Clinton Lester at the latter's home in Mt. Holly. The defendant was apprehended later that evening and at 9:45 P. M. gave a statement to the police admitting that he had killed Lester. The statement, in question and answer form, was recorded by a former court reporter who shortly thereafter transcribed her notes into a typewritten document of 11 pages.

In September 1956 a hearing before a judge and jury was held to determine whether the defendant was then mentally competent to stand trial. The jury, upon consideration of conflicting medical testimony, found that he was. But in January 1957 the same judge who had presided at the prior hearing conducted a second hearing without a jury. The same medical experts who had testified at the prior hearing again testified and were unanimous in concluding that the defendant was then incompetent to stand trial. The judge so found and committed him to the New Jersey State Hospital. Defendant was confined there until late in 1963, when he was certified to be in a state of remission. He was returned to Burlington County and brought to trial on June 16, 1964.

On this appeal defendant does not contend that the jury's verdict was against the weight of the evidence and his allegations of error do not require us to set forth in detail the circumstances of the killing.

The defendant first contends that the trial court's adverse comment on his failure to take the stand constitutes reversible error under the recent ruling of the United States Supreme Court in *Griffin v. State of California*, 85 *S. Ct.* 1229, 14 *L. Ed 2d* 106 (1965), and the ruling of this Court in *State v. Lanzo*, 44 *N. J.* 560 (1965).

The defendant did not testify at his trial. From the evidence produced by the State and the defense, the jury might have found the defendant guilty of murder in the first degree, guilty of murder in the second degree, guilty of manslaughter, not guilty by reason of self-defense or not guilty by

reason of insanity. The trial judge charged the jury on all these possible verdicts. He also charged the jury as follows:

"[W]here evidence brought against the defendant tends to establish facts which if true would justify or tend to justify a conviction, and the defendant is in court and is in a position to deny such evidence of his own knowledge and he fails to take the stand on his own behalf, then his silence will justify a strong inference that he could not deny such evidence."

It is clear that the above charge is erroneous under *Griffin, supra,* and *Lanzo, supra;* and as this is a direct appeal, the conviction must be reversed. *State v. Lanzo, supra.*

As the case must be retried, it is appropriate for us to consider the defendant's remaining grounds for reversal.

When the prosecutor sought to introduce the defendant's confession into evidence, the trial judge excused the jury and conducted a hearing to determine its admissibility. The evidence offered by the State tended to show, and the defense did not dispute, that the confession was obtained without duress, coercion or promise of reward. The defense, however, did offer to produce evidence to show that the defendant was insane at the time he confessed. The trial judge refused to permit the defendant to come forward with that evidence. He reasoned that because the confession was given within a few hours after the killing, to find the defendant insane at the time the confession was given would necessitate a finding that the defendant was also insane at the time of the killing. Therefore, he would be compelled to direct a verdict of acquittal, thus usurping the fact-finding function of the jury on the defense of insanity. Consequently, the trial judge made no finding at that time, or at any time during the remainder of the trial, as to whether defendant's confession was involuntary because of his mental condition.

We agree with the defendant that the ruling of the trial judge was erroneous. The United States Supreme Court in *Blackburn v. State of Alabama,* 361 *U. S.* 199, 80 *S. Ct.* 274, 4 *L. Ed. 2d* 242 (1960), held that the confession of an insane man is inadmissible:

"In the case at bar, the evidence indisputably establishes the strongest probability that Blackburn was insane and incompetent at the time he allegedly confessed. Surely in the present stage of our civilization a most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane; and this judgment can without difficulty be articulated in terms of the unreliability of the confession, the lack of rational choice of the accused, or simply a strong conviction that our system of law enforcement should not operate so as to take advantage of a person in this fashion." *id.*, at *p.* 207, 80 *S. Ct.*, at *p.* 280, 4 *L. Ed.* 2d, at *pp.* 248–49

*Cf. State v. Lucas*, 30 *N. J.* 37, 63 (1959).

In *Jackson v. Denno*, 378 *U. S.* 368, 84 *S. Ct.* 1774, 12 *L. Ed. 2d* 908 (1964), the United States Supreme Court held that if a judge submitted the issue of the voluntariness of the confession to the jury without first determining that it was voluntary, such a procedure would not satisfy the due process requirement that questions of voluntariness be determined in a reliable and clear-cut manner, uninfluenced by extraneous considerations. The court pointed out that it is impossible to determine in what manner the jury resolved the question of voluntariness and to know whether other evidence in the case influenced their determination.

Thus *Blackburn* establishes that the confession of an insane defendant is involuntary and inadmissible and *Jackson* establishes that voluntariness must be determined in the first instance by the trial judge; therefore, it was the duty of the trial judge to determine whether the defendant was insane when he confessed.

Furthermore, we cannot accept the reasoning of the trial judge that if he found that the defendant was incompetent to give a voluntary confession, he would be required to direct a verdict of acquittal. First, it does not necessarily follow that a person who is insane at the time of his confession was in an identical mental condition at the time of the killing, even though the killing preceded the confession by only a few hours. Second, the degree of mental impairment which would render a confession involuntary is not necessarily the same as that which would render a defendant in-

sane under the *M'Naghton* rule as followed in New Jersey. See *Aponte v. State*, 30 *N. J.* 441, 450 (1959). Third, even assuming the issue of insanity to be considered by the judge and the jury were identical, there is nothing anomalous in the judge and jury successively determining identical issues. See *State v. Smith*, 32 *N. J.* 501, 557–560 (1960); *Kyle v. Green Acres*, 44 *N. J.* 100, 113–114 (1965); *State v. Hudson County News Co.*, 41 *N. J.* 247, 256–257 (1963). If the trial judge found the confession to be inadmissible because the defendant was incompetent to give a voluntary confession, the trial would have proceeded with the confession excluded and the jury would have ultimately determined the issues including the defense of insanity. On the other hand, if the trial judge found the confession admissible, both the State and the defendant would be free to present to the jury evidence as to the voluntariness of the confession and the mental condition of the defendant at the time of the killing.

The defendant next contends that the trial court erred in permitting the former court reporter, who had recorded his confession, to read the questions and answers verbatim to the jury. The State first attempted to introduce the transcript of the confession as an exhibit but the trial judge refused to admit it as such because there was no proof that it had been read and signed, or otherwise acknowledged, by the defendant. Later, however, the trial court permitted the reporter to read the questions and answers to the jury. The trial court's action in permitting the questions and answers to be read into the record is expressly approved by this Court in *State v. Bindhammer*, 44 *N. J.* 372, 385–387 (1965), and therefore the defendant's contention is without merit.

The defendant also contends that a remark made by the prosecutor in summation was prejudicial error. The prosecutor has acknowledged that his remark was erroneous and, as the incident will undoubtedly not recur at the new trial, further discussion is unwarranted.

The judgment of conviction is reversed and the cause is remanded for a new trial.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For affirmance*—None.