**Mortimer L. SCHULTZ, Petitioner,**

v.

**Howard YEAGER, Warden, New Jersey State Prison, Respondent.**

**Civ. No. 664–66.**

United States District Court
D. New Jersey.

Nov. 21, 1967.

---

Querques & Isles, Orange, N. J., for petitioner.

Brendan T. Byrne, Prosecutor of Essex County, by Barry H. Evanchick, Asst. Prosecutor, Newark, N. J., for respondent.

## MEMORANDUM
### and
### ORDER

AUGELLI, Chief Judge:

This is a petition for federal habeas corpus relief. Petitioner was tried in the Essex County Court on a number of indictments handed down by the Essex County Grand Jury on December 19, 1963 and January 2, 1964. The indictments contained a total of 74 counts, charging petitioner with different types of commercial fraud, including obtaining money by false pretenses, conversion of

money by a corporate officer, keeping of fraudulent accounts by a partner, circulation of false written statements by a partner, omission of material particulars in books of account by a partner, and making of false entries by an officer in corporate books of account.

The trial commenced on May 13, 1964, and terminated on June 16, 1964, with jury verdicts of guilty on 67 counts, and not guilty on 3 counts. The remaining 4 counts were dismissed at the trial. On August 5, 1964, petitioner, who had appeared PRO SE throughout the trial, was sentenced to serve terms of imprisonment aggregating not less than 10 nor more than 20 years, and he is presently confined in the New Jersey State Prison.

■ Following the imposition of sentences petitioner, through his present counsel, filed an appeal in the Appellate Division of the Superior Court of New Jersey. Before argument in that court, the Supreme Court of New Jersey certified the appeal, and on January 24, 1966, in a PER CURIAM opinion, affirmed the judgments of conviction. State v. Schultz, 46 N.J. 254, 216 A.2d 372 (1966). On April 25, 1966, the Supreme Court of the United States denied certiorari. Schultz v. New Jersey, 384 U.S. 918, 86 S.Ct. 1367, 16 L.Ed.2d 439 (1966). Since the petition here raises the same issues that were determined by the highest state court, petitioner has exhausted his state remedies. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963).

In this Court, petitioner alleges that his conviction and sentences, pursuant to which he is being detained, are "* * * in violation of the Fourth and Fifth Amendments to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, in that petitioner's conviction was based upon evidence obtained by an unreasonable search and seizure; the petitioner was forced to incriminate himself due to the failure of the state to accord him immunity from prosecution under applicable state law; and petitioner was subjected to numerous comments, during the course of his trial, during the State's summation and during the charge of the court, concerning his failure to testify in his own behalf."

This Court has heard argument on these issues in connection with petitioner's request for an evidentiary hearing on said issues. The request was taken under advisement. After a careful and detailed examination of the entire state court record, the Court has concluded that petitioner's federal constitutional rights have been violated in the particulars hereinafter set forth. Consequently, no evidentiary hearing is necessary.

The facts relating to the "search and seizure" and "immunity" issues are as follows:

On June 26, 1963, the New Jersey Bureau of Securities issued and served upon petitioner a subpoena, directing him to appear forthwith before the Bureau to testify regarding practices of himself and others in the sale of securities in New Jersey. On the following day, two additional subpoenas, DUCES TECUM in form, were issued and served by the Bureau upon Sherman Hirschfeld, an accountant who had been employed by petitioner and his companies as comptroller and office manager. One of said subpoenas, addressed to Hirschfeld personally, directed him to appear forthwith before the Bureau to testify regarding his activity, and that of others, in the sale of securities in New Jersey, and to bring with him "[a]ll personal records of Mortimer L. Schultz [petitioner] and First Jersey Servicing Co. including the records of any participating certificates sold by Mortimer L. Schultz, bookkeeping records and financial statements of Mortimer L. Schultz's activities, San-Mac Associates, [and] Wiss Building Associates." The other subpoena served on Hirschfeld was directed to First Jersey Servicing Co., and required a forthwith appearance

before the Bureau with "[a]ll books, records, papers and documents."

First Jersey Servicing Co. was wholly owned by petitioner. San-Mac Associates and Wiss Building Associates were limited partnerships in which petitioner was the sole general partner. Hirschfeld's relationship to petitioner and his companies has already been noted. Hirschfeld was served with the "forthwith" subpoenas previously mentioned, at his office, which was also petitioner's private office as well as the office of his various business enterprises.

As a result of the subpoenas served upon Hirschfeld on June 27, 1963, the Bureau of Securities obtained numerous records and documents, which petitioner later claimed were the business and personal records of himself and his family. On July 3, 1963, when petitioner appeared with counsel before the Bureau in response to the subpoena directed personally to him, he was only questioned concerning certain "Lin-Bay" properties, which questions he answered after his counsel stated on the record:

"At this time, if I may interrupt, I think my client would like to exercise his privilege against stating anything which might incriminate him for the record."

After the questioning on the Lin-Bay properties had been concluded, and following some colloquy regarding petitioner's failure to produce records, he was excused and never asked to return. Petitioner states that when he appeared before the Bureau on July 3, 1963, the Bureau was in possession of the records it had obtained from Hirschfeld, but that petitioner did not know this, nor was he informed of that fact. Petitioner contends he should have been told by the Bureau that it was then in possession of said records; also, that the manner in which the records were obtained, VIA the Hirschfeld subpoenas, was a subterfuge to defeat petitioner's right to immunity. It is to be noted that Lin-Bay, a limited partnership in which pe-

titioner at one time had an interest, was not at all involved in the criminal trial.

With this factual background, consideration will first be given to petitioner's claim that he was entitled to immunity from prosecution under N.J.S.A. 49:3–16(d), and then to his claim that some of the records used at his trial were obtained by an illegal search and seizure. The trial court afforded petitioner a hearing on both issues, but denied relief.

In affirming the convictions in this case, the Supreme Court of New Jersey held that there was no factual basis for a claim of immunity under the New Jersey statute. The court pointed out that petitioner was not subpoenaed to produce any records, and that he produced none; that any personal records of petitioner that were produced by the custodian (Hirschfeld) in response to the Bureau subpoenas "* * * may well have been part of the total records of the business operations because of the mode in which those operations were conducted." The court further pointed out that petitioner made no effort to show how any of the records bore upon his conviction; and that, in any event, no claim of privilege was made to the Bureau when the records were handed over.

There is no merit to petitioner's claim of immunity. N.J.S.A. 49:3–16 authorizes the New Jersey Bureau of Securities to investigate violations of the securities law and to compel, through subpoena, the attendance of witnesses and the production of records. Subsection (d) of the statute provides that:

"No person is excused from attending and testifying or from producing any document or record before the bureau, or in obedience to the subpoena of the bureau chief or any officer designated by him, or in any proceeding instituted by the bureau, on the ground that the testimony or evidence (documentary or otherwise) required of him may tend to incriminate

him or subject him to a penalty or forfeiture; but no individual may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after claiming his privilege against self-incrimination, to testify or produce evidence (documentary or otherwise), except that the individual testifying is not exempt from prosecution and punishment for perjury, false swearing or contempt committed in testifying."

The statute clearly grants immunity from criminal prosecution to an individual who, after claiming his privilege against self-incrimination, is compelled to testify or produce documentary evidence. But there must be a factual situation that comes within the statutory language before a grant of immunity is warranted. The testimony given by petitioner on July 3, 1963, regarding the Lin-Bay properties, is not here in issue. The claim of privilege that was asserted on that day by petitioner's counsel, even assuming its validity, cannot be construed to extend to matters concerning which petitioner neither testified nor produced records. In response to the subpoena served upon him personally, petitioner appeared and testified only with respect to Lin-Bay. He was not subpoenaed or compelled to produce any records, and he produced none.

Petitioner's reliance on the cases of People ex rel. Kenny v. Adams, 292 N.Y. 65, 54 N.E.2d 10 (1944), and United States v. Hopps, 215 F.Supp. 734 (D.Md. 1962), aff'd 331 F.2d 332 (4 Cir. 1964), is misplaced.

In Kenny, the defendant was compelled, under threat of arrest, to turn over to state authorities, pursuant to a "forthwith" subpoena, certain books and records kept in his private business, prior to his required appearance before said state authorities. In holding that the defendant was entitled to immunity, the court found as a sufficient basis therefor the fact that the state authorities

had compelled the defendant, over his objection, to submit his records to them pursuant to the subpoena directed to him. No such factual situation is present in the case at bar.

In Hopps, the defendant was convicted of using the mails to defraud in connection with the sale of securities. One of the contentions made by the defendant was that he was entitled to immunity under Article 23–A, § 359, of the New York General Business Law, McKinney's Consol.Laws, c. 20. This statute provides that a person shall not be prosecuted if he is directed, over his request to be excused, to produce documents by state authorities in a securities investigation. The subpoena in Hopps was addressed to the custodian of certain corporate and other records which the defendant claimed belonged to him. It was held that since the defendant did not produce these records pursuant to a subpoena directed to him in the state proceedings, he was not entitled to immunity under the New York statute. It was also held that there was no basis for the contention that the manner in which the records were acquired was a subterfuge to defeat the defendant's immunity. Hopps can hardly be considered an authority that favors petitioner.

Turning now to petitioner's contention that some of the records used at his trial were obtained by an illegal search and seizure, the Supreme Court of New Jersey held that "[t]here was no search or seizure. There was a subpoena, and the representative of the corporation and limited partnerships complied with the subpoena without protest."

A subpoena duces tecum, or an order authorized by law, calling for the production of records, may be so broad and sweeping as to constitute an unreasonable search and seizure under the Fourth Amendment. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68

L.Ed. 696 (1924); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 47, 17 L.Ed.2d 51 (1967); United States v. Hopps, 215 F.Supp. 734 (D.C.), aff'd 331 F.2d 332 (4 Cir.); In Re Grand Jury Subpoena Duces Tecum, 203 F. Supp. 575 (S.D.N.Y.1961), and cases cited therein. The Fourth Amendment right against unreasonable searches and seizures is applicable to the states under the due process clause of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

 Corporate records, like personal papers, may also enjoy the Fourth Amendment constitutional protection from unreasonable searches and seizures. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 47, 17 L.Ed.2d 51 (1967). Partnership records are treated the same as personal records so far as this constitutional right is concerned. United States v. Brasley, 268 F. 59 (3 Cir. 1920); In Re Subpoena Duces Tecum, 81 F.Supp. 418 (N.D.Cal.1948). Of course, a person must have standing in order to be entitled to object to the use of records in a criminal proceeding against him on the ground of an alleged illegal search and seizure. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Schwimmer v. United States, 232 F.2d 855 (8 Cir. 1956); Henzel v. United States, 296 F.2d 650 (5 Cir. 1961); United States ex rel. DeForte v. Mancusi, 379 F.2d 897 (2 Cir. 1967). Once standing to object is established, the court must then apply federal standards to determine whether or not there has been an unreasonable search and seizure by state officials. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The resolution of this question depends upon a number of factors. The court must determine whether the records to be produced are relevant to the investigation being pursued, whether such records are specified with reasonable particularity,

and whether the records cover a reasonable period of time. The Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive. See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 47, 17 L.Ed.2d 51; In Re Grand Jury Subpoena Duces Tecum, 203 F.Supp. 575, (D.C.).

 In the case at bar, the subpoenas served upon Hirschfeld on June 27, 1963, called for the production of all personal records of petitioner, as well as records of businesses of which he was the sole general partner or owner. The subpoenas were served at petitioner's private office, which was also his business office. There can be no question of petitioner's standing to raise his Fourth Amendment rights with respect to his business and personal papers. Nor is there any evidence in the record that petitioner consented to the delivery of these records to the state authorities under the Hirschfeld subpoenas or otherwise. Under applicable federal standards, the subpoenas served upon Hirschfeld were unlimited either as to relevancy, specificity, or time. They were so broad and sweeping in scope as to call for production of all of petitioner's books and records, both business and personal. On the basis of said subpoenas, petitioner's records were immediately removed from his office, and in his absence, by the Bureau of Securities, and by it turned over to the prosecutor for use at petitioner's trial.

At the hearing before the trial judge, on petitioner's motion to suppress use of the records, the prosecutor admitted that most of the records offered at the trial were received from the Bureau of Securities. It also appears that the Bureau's investigation of petitioner's affairs was a cooperative effort with the prosecutor's office, and also that such investigation led directly to the filing of the first criminal complaint against petitioner on July 11, 1963.

Under all of these circumstances, the production of petitioner's records pursu-

ant to the subpoenas served upon Hirschfeld constituted an unreasonable search and seizure in violation of petitioner's Fourth Amendment rights, and the documents obtained thereby should have been suppressed for use as evidence at his trial.

With respect to comments made by the trial judge and the prosecutor on petitioner's failure to testify in his own behalf, the record discloses that 23 such comments were made during the course of the trial.[1] The typical comment by the prosecutor took the form of an objection to a question put by petitioner to a witness on cross-examination, followed by a statement that petitioner would have his opportunity to testify if he so desired. The typical remark by the judge, to the effect that he could not permit petitioner to testify until he took the witness stand and was sworn, was uttered either SUA SPONTE or in ruling on an objection.

In addition to the comments made during the trial, the prosecutor, in the course of his summation, commented 12 times on the failure of petitioner to testify in his own behalf, and asked the jury thereby to infer petitioner's guilt from his silence.[2] For example, at one point during summation, the prosecutor stated:

> "The Court will instruct you may— you may infer he could not truthfully deny the fraudulent intent that is dictated by these facts."

The trial judge did so charge the jury, despite petitioner's inartfully drawn but clear request that the judge make no mention in his charge of petitioner's failure to testify. On this point, the judge charged:

> "The State has commented upon the fact that the defendant has not taken the stand. As a matter of fact, Mortimer L. Schultz did not take the stand, and under our law a defendant cannot be compelled to testify. His failure to be a witness in his own behalf raises no presumption of guilt, but if facts are testified to which tend to prove his guilt, which facts he could by his oath deny, his failure to testify in his own behalf raises a permissible inference that he could not truthfully deny those facts."

It is to be noted that when this charge was delivered, the instruction given by the trial judge regarding petitioner's failure to testify, was permissible under New Jersey law as then understood and applied. State v. Corby, 28 N.J. 106, 145 A.2d 289 (1958).

After being instructed on the whole case, which instructions included the Corby rule as herein quoted, the jury retired and began its deliberations on June 15, 1964, at 5:05 P. M. These deliberations continued until 11:00 P. M. On June 16, at 9:30 A. M. the jury reconvened and resumed its deliberations. Shortly after 11:00 A. M. of that day the court, at the request of the prosecutor, recalled the jury and ordered it to cease further deliberations. The prosecutor's request was prompted by an article that had appeared in The New York Times that very morning reporting the opinion handed down the previous day by the Supreme Court of the United States in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. After a discussion of the problem posed by this decision, during which petitioner unsuccessfully moved for a mistrial, the court recalled the jury at 1:55 P. M. and charged it as follows:

> THE COURT: "Outside your presence and in the presence of the defendant, the Prosecutor has moved to have

---

1. These may be found in the following dated transcripts, at the pages indicated: May 22, at pp. 351, 352; May 25, at pp. 485, 493; June 1, at pp. 39, 66, 67, 105, 112, 113, 115; June 2, at p. 80; June 3, at pp. 210, 238a, 245; June 4, at p. 103; June 8, at pp. 51, 55, 56, 64, 112; June 9, at p. 114; June 10, at pp. 154, 177; June 11, at p. 49.

2. See transcript of June 15, 1964, pp. 2–57, and especially pp. 9, 38, 43, 55, and 56, relating to the issue of fraudulent intent.

the Court recharge you due to a very recent decision of the United States Supreme Court. He has furnished me with a copy to charge, which has been written and a copy furnished to Mr. Schultz. This Request to Charge is incorporated in the subsequent charge to you with some modification, but only after consultation with the defendant, Mr. Schultz, and with the Prosecutor and this has already been read to them. I had previously charged you as follows in part. This is in reference to Mr. Schultz, quote:

" 'His failure to be a witness in his own behalf raises no presumption of guilt, but if facts are testified to which tend to prove his guilt, which facts he could by his own oath deny, his failure to testify in his own behalf raises a permissible inference that he could not truthfully deny those facts.'

"This portion of the charge that I have just referred to shall be disregarded in every respect, and not be applied by you as the law in this case. You will consider it as not charged and likewise I instruct you that any and all comments made by the Prosecutor either during the course of the trial or in argument, or in summation in regard to the failure of the defendant to testify, are also stricken and must be disregarded, and I give you the following charge which shall govern your deliberations:

"This defendant as are all defendants in criminal cases is presumed to be innocent, and this presumption of innocence stays with the defendant throughout the trial, and until you, the members of the Jury, reach a verdict. The failure of the defendant to take the witness stand and testify in his own behalf does not create any presumption against him, and you are charged that you must not permit the fact that he failed to take the stand to weigh in the slightest degree against the defendant, nor shall this

fact enter into the discussions or deliberations of the Jury in any manner.

"I do charge you, however, that in your deliberations you shall decide the case upon all of the evidence before you offered by the State and by the defendant, and all of the facts and circumstances in reaching your ultimate determinations in deciding the defendant's innocence or guilt. You are to consider all of the instructions as I have previously given them to you, except as modified by this charge in your deliberations."

After receiving these instructions, the jury again retired to deliberate, and at 5:00 P. M. on June 16, 1964, returned the verdicts previously mentioned herein.

This being the sequence of events, one can appreciate the dilemma caused by Malloy v. Hogan at the time it was brought to the trial judge's attention. The transcript [3] reflects the judge's deep concern not only with the charge as originally given to the jury in regard to petitioner's failure to testify, but also with the prosecutor's summation wherein on "at least four or five occasions he commented in his summation and rather strongly about the failure of the accused to testify."

It is apparent that both the trial judge and the prosecutor recognized that Malloy raised a serious federal constitutional question as to the propriety of the comments regarding petitioner's failure to testify that had been made not only during the course of the trial, but also in the prosecutor's summation, and in the court's initial charge to the jury. As has been noted, it was sought to withdraw such comments by the supplemental charge previously mentioned herein. A reading of that charge discloses, however, contrary to the State's assumption, that the attempted withdrawal was limited to the comments made by the prosecutor during trial and in summation. It appears that, through inadvertence, the trial judge said nothing to the jury about disregarding the

3. See transcript of June 15–16, 1964, pp. 53–80.

comments he himself had made throughout the trial.

■ Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), decided that the Fourteenth Amendment makes the Fifth Amendment prohibition against infringement of the privilege against self-incrimination applicable to the States, and that the same standards must determine whether the silence of an accused, in either a state or federal proceeding, is justified. In view of Malloy, there was "no legitimate escape" from the rule enunciated in Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), that the Fifth Amendment "in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

Petitioner argues that regardless of what the law of New Jersey may have been under Corby, his federal constitutional rights should be measured by the principles laid down in Malloy and Griffin; that when so measured against the principles of those cases, it is clear that such rights were violated; and that the court's supplemental charge to the jury did not cure the situation or erase the prejudice and harm that had been done.

The Supreme Court of New Jersey has recognized that the Corby rule is no longer good law, and has, since Griffin, reversed convictions because of comments made by the prosecutor, or the judge, or both, on a defendant's failure to testify. State v. Lanzo, 44 N.J. 560, 210 A.2d 613 (1965); State v. Aviles, 45 N.J. 152, 211 A.2d 796 (1965); State v. Davis, 45 N.J. 195, 212 A.2d 19 (1965). And see, also, State v. Pickles, 46 N.J. 542, 218 A.2d 609 (1966); State v. Persiano, 91 N.J.Super. 299, 220 A.2d 116 (App.Div.1966).

■ Griffin was decided on April 28, 1965. In Tehan v. U. S. ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), the Griffin rule was limited in its application to cases still pending on direct review at the time Griffin was decided. The case at bar was not decided by the state Supreme Court until January 24, 1966, hence it must be assumed that Malloy and Griffin were the law of this case at the trial and appellate levels. It follows, then, that unless it can be shown that the comments and instructions here challenged were harmless and not prejudicial to petitioner, or that petitioner's conduct resulted in a waiver of his privilege against self-incrimination, or that the supplemental charge was sufficiently effective to neutralize any error that may have occurred, petitioner is entitled to the relief he seeks in this Court. This determination, of course, must be made according to federal, and not state, standards.

The State's claim that petitioner's conduct invited or justified the comments that were made, must be viewed in the context of the entire record. Petitioner may be "an informed, articulate, and intelligent man", but he is not a lawyer. He made many mistakes in attempting to properly formulate the questions he put to witnesses. This ineptness brought forth from the judge the very first comment on petitioner's right to testify. This occurred on May 22, 1964, the fourth day of a trial that was to continue until June 16. The occasion was a question to which objection was made by the prosecutor on the ground of irrelevancy, and not because petitioner was trying to testify. The court directed petitioner to reframe the question, and then added:

"Well, when you get on the witness stand and you are sworn, I will permit you to testify, but I can't let you testify when you are acting as counsel."

And again, on May 25, after petitioner had put a rather involved question to a witness, the prosecutor stated he had no objection to the "multi-question". This was followed by the court's comment that:

"I have no objection to it either, but I would like to have a statement from Mr. Schultz that he intends to go on the witness stand to contradict this witness."

When these comments were made the court could not then have known whether or not petitioner intended to testify. With respect to the May 22 incident, a ruling sustaining the prosecutor's objection and directing petitioner to reframe his question should have sufficed. And an appropriate ruling could likewise have been made on the "multi" question, without commenting on petitioner's right to take the stand to contradict the witness. These comments and many more were made by both the judge and the prosecutor throughout the course of the trial. See in this connection references cited in footnote [1] of this memorandum. See, also, State v. Davis, 45 N.J. 195, 197, 212 A.2d 19 (1965), for suggested practice to be followed where comment is made on a defendant's failure to take the witness stand.

■ It is not to be doubted, because of the complexity and duration of petitioner's trial, and because of petitioner's PRO SE status, that the trial judge was confronted with difficult and trying situations. But the record does not support the conclusion that petitioner, by his conduct, invited or justified the challenged comments, or that such conduct resulted in a waiver of his federal constitutional rights. There could hardly have been a waiver of petitioner's constitutional privilege against self-incrimination by virtue of his conduct during the trial when it is realized that no such privilege was available to petitioner until after Malloy became the law of the case on the "comment" issue. And this did not occur until after the trial had been con-

cluded and the judge delivered his initial charge to the jury.

To be sure, there are cases in which a PRO SE defendant's conduct may be such as to warrant comment on his failure to testify, and result in a waiver or forfeiture of his privilege against self-incrimination. Illustrative is Redfield v. United States, 315 F.2d 76 (9 Cir. 1963). See, also, Smith v. United States, 234 F.2d 385 (5 Cir. 1956). Each case, of course, turns on its own facts.

In Redfield, for example, the court relied upon the waiver theory, and found support therefor in a record which demonstrated that:

"* * * Redfield persistently testified, though not under oath, throughout his trial. He did this voluntarily while purporting to act in the role of counsel, and in flagrant and contemptuous disregard of repeated admonitions and orders from the bench not to testify without first being sworn."

In the case at bar, a reference to the record [4] will show that petitioner's conduct, while sometimes one of confusion, was respectful of the court, and indicative of a desire to act in accordance with the judge's rulings and instructions.

■ Notwithstanding all the comments that were made, the State argues that petitioner was not harmed or prejudiced thereby because in his summation petitioner admitted all of the facts of the case. But this ignores the crucial issue of fraudulent intent, which petitioner specifically denied, and which the judge and the prosecutor indicated could be inferred from petitioner's failure to

---

1. These may be found in the following dated transcripts, at the pages indicated: May 22, at pp. 351, 352; May 25, at pp. 485, 493; June 1, at pp. 39, 66, 67, 105, 112, 113, 115.; June 2, at p. 80; June 3, at pp. 210, 238a, 245; June 4, at p. 103; June 8, at pp. 51, 55, 56, 64, 112; June 9, at p. 114; June 10, at pp. 154, 177; June 11, at p. 49.

4. See transcript of June 4, 1964, at p. 41, wherein the trial judge, in addressing petitioner, said:

"This can go in the record. I have no objection to it, but I just at this point— I don't know what's going to happen later on. The defendant has appeared pro se. I am not trying to hand you anything. I am serious when I say that I think you have handled yourself exceptionally well for a layman and tried a very good case so far. As to the result, I am not the one who finds the facts. I only deal in questions of law. I will say, Mr. Schultz, that you have conducted yourself as a gentleman."

take the stand. In his summation,[5] petitioner told the jury:

"* * * Have I taken the stand? I could have done nothing but say the facts are true the intent is gone and there is no intent. What else could I say? What else could I explain?"

In United States v. Curtiss, 330 F.2d 278 (2 Cir. 1964), involving an appeal by a PRO SE defendant from a conviction for income tax evasion, it was held that the prosecutor's statements on summation constituted prejudicial comment on defendant's failure to take the stand. The court further held that defendant's summation as his own attorney did not amount to a waiver of his Fifth Amendment protection, and that defendant's efforts to argue his case in summation with facts outside the record could not be used as an excuse by the prosecutor to disregard the no-comment rule. The proper remedy for the prosecutor in such a situation, said the court, is not the adoption of unfair procedures, but in proper objections to the trial judge who can rule that argument outside the record is not permitted, strike such argument where appropriate, and properly charge the jury on the point.

 It is also contended by the State that petitioner's summation invited the comment that was made by the prosecutor when his turn came to sum up. Support for this proposition is based on United States v. Feinberg, 140 F.2d 592, 154 A.L.R. 272 (2 Cir. 1944). That case is readily distinguishable. In Feinberg, it was defense counsel who initiated the comment issue, and the prosecutor was held to be justified under the facts of that case in offering to the jury an explanation as to why the defendant did no take the stand. See also, Baker v. United States, 115 F.2d 533 (8 Cir. 1940). In the instant case, petitioner's summation could hardly be said to be a sufficient provocation to justify the prosecutor's comments. On this record, the indications are that it was petitioner who was placed in a position that com-

pelled him, in his summation, to answer the numerous comments of the judge and the prosecutor that were made in the course of the trial. This Court is satisfied that the prosecutor's comments in his summation were not justified on the basis of any theory of waiver or invitation by petitioner.

The State Supreme Court, in its PER CURIAM opinion, stated it could not find that "the comments during the trial or in the court's charge to the jury offended controlling federal doctrine", and added that "the comments were in fact withdrawn in the supplemental instruction." Reference was made in the opinion to the California Supreme Court decision of People v. Teale, 63 Cal.2d 178, 45 Cal.Rptr. 729, 404 P.2d 209.

In that case, which was tried before Griffin, the prosecutor, as then permitted by a California constitutional provision, extensively commented on the failure of defendants to testify, and the trial judge charged the jury that it could draw adverse inferences from such failure. After the trial, but before the case was considered on appeal, the state constitutional provision was invalidated by Griffin. The California Supreme Court, notwithstanding Griffin, and in reliance on California's "harmless-error" rule, upheld the convictions, finding from other substantial evidence in the case that proof of guilt was overwhelming.

After the petition for relief in this Court was filed, the Supreme Court of the United States reversed Teale, Sub Nom., Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and enunciated the rule that

"* * * before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

The court went on to say that in view of the continuous and repeated references by the prosecutor and the judge to the defendants' failure to testify, and to the

---

5. For the full summation, see the transcript of June 15, 1964, pp. 11–76.

inferences that could be drawn therefrom, the State had not demonstrated, beyond a reasonable doubt, that such comment and instructions did not contribute to the convictions. See, also, Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

Chapman recognizes that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." But that same case makes it clear that before a federal constitutional error can be held harmless, the state court must now be able to declare a belief that the alleged error was harmless "beyond a reasonable doubt." No such showing could be made on the basis of the record in this case. As in Chapman, so here, there were continuous and repeated references by the judge and the prosecutor to petitioner's right and failure to take the stand and testify in his own behalf. Such "machine-gun repetition of a denial of constitutional rights" can hardly be considered harmless error. This Court is satisfied from an examination of the record as a whole, that petitioner's federal constitutional rights were violated in light of the federal standards established by Malloy, Griffin, and Chapman.

It remains to consider whether the trial court's supplemental charge was sufficiently effective to eliminate or neutralize the errors that occurred in this case. From May 22, 1964, when the judge made his first comment about petitioner taking the witness stand, to 1:55 P. M. on June 16, 1964, when the judge gave his supplemental charge, the jury had heard the numerous references made by the judge and the prosecutor on petitioner's right to testify and his failure to do so. The prosecutor stressed this failure to testify in his summation, and the judge initially charged the jury that an adverse inference could be drawn from such facts. The jury had deliberated 7½ hours under the guidance of the initial charge before it was recalled some hours later to be told that they were to disregard that portion of the charge dealing with petitioner's failure to testify, permissible inferences that could be drawn therefrom, and the prosecutor's comments.

This Court is of the opinion that the cumulative effect of the comments that were made in this case regarding petitioner's right and failure to testify, were so overwhelming when considered in conjunction with the court's initial erroneous charge, that the supplemental charge, as given, was legally insufficient to cure the situation. See Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1960); DeLuna v. United States, 308 F.2d 140, 154 (5 Cir. 1962); United States v. Schwartz, 325 F.2d 355, 358 (3 Cir. 1963); United States v. Clarke, 343 F.2d 90, 93 (3 Cir. 1965). In any event, it is clear on this record, that the State has not demonstrated, beyond a reasonable doubt, that the challenged comments and instructions did not contribute to petitioner's conviction. Chapman v. California, 386 U.S. 18, 26, 87 S.Ct. 824, 17 L.Ed.2d 705.

For the reasons stated herein, it is, on this 21st day of November, 1967,

Ordered, that a writ of habeas corpus issue, without prejudice to the right of the State of New Jersey to retry petitioner if it elects to do so; and it is further

Ordered, that copies of this Memorandum and Order be served by the United States Marshal upon the Prosecutor of Essex County and respondent Warden of the New Jersey State Prison, within eight (8) days from the date hereof.