315 F.2d 76
 Lavere REDFIELD, Appellant,
v.
UNITED STATES of America, Appellee.
Lavere REDFIELD, Appellant,
v.
Raymond W. MAY, Warden of the Federal Correctional Institution at Terminal Island, California, Appellee.
 No. 18167.
 No. 18168.
 United States Court of Appeals Ninth Circuit.
 March 6, 1963.
 
 COPYRIGHT MATERIAL OMITTED Burton Marks, Beverly Hills, Cal., for appellant.
 John W. Bonner, U. S. Atty., Thomas R. C. Wilson, II, Asst. U. S. Atty., and Melvin D. Close, Jr., Asst. U. S. Atty., Reno, Nev., for appellee United States.
 Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Division; and Gordon P. Levy, Asst. U. S. Atty., Los Angeles, Cal. for appellee May.
 Before HAMLEY, HAMLIN and KOELSCH, Circuit Judges.
 HAMLEY, Circuit Judge.
 
 
 1
 These two appeals have been consolidated for argument and disposition in this court. One (No. 18167) involves the denial of alternative motions; one, made under 28 U.S.C. § 2255, to vacate, set aside or correct an alleged illegal sentence, and the other, made under Rule 35, Federal Rules of Criminal Procedure, to correct the same sentence. The other appeal (No. 18168) involves the denial of an application for a writ of habeas corpus.
 
 
 2
 Lavere Redfield, the appellant in both appeals, was convicted on a jury verdict in the United States District Court for the District of Nevada on six counts of an eight-count indictment charging attempted income tax evasion.[1] Three of the counts under which he was convicted (Nos. 1, 2 and 3), charged wilful attempts to evade and defeat income taxes owed by him for the years 1953, 1954 and 1955, computed by Redfield on a community property basis. The other three counts under which he was convicted (Nos. 5, 6 and 7), charged wilful attempts to evade and defeat income taxes in like amounts for the same years owed by his wife, Nell J. Redfield, also computed by Redfield on a community property basis.
 
 
 3
 Redfield was sentenced to five years imprisonment on each of the six counts, the terms to run concurrently. He was also fined ten thousand dollars on each count, the fines being cumulative and aggregating sixty thousand dollars. A motion for a new trial was denied. United States v. Redfield, D.C.Nev., 197 F.Supp. 559. Redfield appealed, and the judgment was affirmed. Redfield v. United States, 9 Cir., 295 F.2d 249. Certiorari and a rehearing thereon were denied by the Supreme Court. Redfield v. United States, 369 U.S. 803, 863, 82 S.Ct. 642, 7 L.Ed.2d 550, the latter order being entered on April 23, 1962.
 
 
 4
 Seven days later, on April 30, 1962, Redfield filed, in the United States District Court for the District of Nevada, this motion under section 2255, to vacate, set aside or correct the sentences. Three grounds for such relief were urged: (1) the privilege against self-incrimination had been violated by the trial court during the course of the trial; (2) the sentences on counts 5, 6 and 7, pertaining to income taxes owed by his wife, were illegal, because the reporting of a single community income by separate returns of husband and wife constitutes but one offense in any taxable year where the husband prepares the returns as manager of the community; and (3) counts 5, 6 and 7 actually state offenses under 26 U.S.C. § 7207, 1954 Internal Revenue Code, and the lesser penalties there provided for should have been imposed.
 
 
 5
 At the same time, and in the alternative, Redfield moved in the same court, under Rule 35, to correct the alleged illegal sentences imposed under counts 5, 6 and 7 on the grounds set out under (2) and (3) above.
 
 
 6
 The two motions were submitted on briefs and, on June 25, 1962 an order was entered denying both motions. On July 5, 1962, Redfield filed a notice of appeal from this order.
 
 
 7
 On July 2, 1962, before the time for taking an appeal from the order of June 25, 1962 had expired, Redfield, then incarcerated at Terminal Island, Los Angeles County, California, filed an application for a writ of habeas corpus in the United States District Court for the Southern District of California. In this petition the only ground relied upon was the first ground asserted in the section 2255 proceeding, namely, that his privilege against self-incrimination had been violated by the trial court during the course of the trial.
 
 
 8
 On the day that the habeas corpus proceeding was instituted, an order to show cause was entered therein, returnable on July 16, 1962. Following a hearing in the California habeas corpus proceeding on July 16, 1962, an order was entered therein on July 20, 1962, denying the application for a writ of habeas corpus. Redfield appealed from this order on July 26, 1962.
 
 
 9
 The first question presented in the Nevada appeal, No. 18167, and this only by way of the section 2255 motion therein is that, at Redfield's trial, his Fifth Amendment privilege against self-incrimination was violated.[2] According to appellant this privilege was violated several times during the trial and in three different respects, namely: (1) the trial court, in the presence of the jury, several times advised Redfield that he had a right to take the witness stand; (2) the trial court in the presence of the jury several times told, asked or suggested to Redfield that he take the witness stand; and (3) the trial court, in the presence of the jury, cross-examined Redfield while the latter, acting as attorney pro se, was cross-examining a Government witness.
 
 
 10
 The Government presents no argument on the merits against these self-incrimination contentions. It urges only that the same contentions were raised in Redfield's motion for a new trial following his conviction. Accordingly, it is argued, these contentions were dealt with and disposed of by the trial court in denying that motion and by this court in affirming on the appeal from the conviction. The Government argues from this that while the doctrine of res judicata is concededly not applicable, the prior determination of the same question is of such weight as to make the district court's rejection of these contentions in the present proceeding "tantamount to conclusive."
 
 
 11
 On the appeal from his conviction one of Redfield's grounds for reversal was the asserted error of the trial court in allegedly making improper and prejudicial remarks and rulings throughout the trial. Numerous citations were made to the trial court record for the purpose of demonstrating that the trial judge unnecessarily interrupted Redfield, who was acting as his own counsel, belittled and chastised him before the jury, threatened in the presence of the jury, to cite appellant for contempt, improperly curtailed cross-examination, vouched for the credibility of opposing witnesses, and stated in the presence of the jury that Redfield was entitled to take the witness stand. Eight of the twenty-one trial episodes which Redfield now relies upon in this section 2255 proceeding were cited on the prior appeal in support of the ground for reversal described above.
 
 
 12
 Despite the fact that Redfield and his counsel were fully aware of all of these trial episodes, and made reference to several of them in presenting other arguments, he did not on that appeal expressly invoke the Fifth Amendment privilege against self-incrimination. Either the point did not then occur to Redfield and his then counsel, or they did not consider it worthy of a specification of error. Thus appellant's own past attitude with regard to the matter is a pretty good indication that it is without substance.
 
 
 13
 Our own consideration of the record and the applicable law substantiates this appraisal.
 
 
 14
 The privilege against self-incrimination not only forbids employment of judicial process to require a defendant to testify (Adamson v. California, 332 U.S. 46, 50, note 6, 67 S.Ct. 1672, 91 L.Ed. 1903), but also forbids the court or the prosecution from placing the defendant in a position where he must testify in order to avoid an adverse inference on the part of the jury.
 
 
 15
 Accordingly, the right may be violated by an official statement in the presence of the jury that the defendant is entitled to testify (McKnight v. United States, 6 Cir., 115 F. 972), or by an official suggestion that the defendant take the stand or make an admission. See Johnson v. United States, 318 U.S. 189, 197, 63 S.Ct. 549, 87 L.Ed. 704; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. It may also be violated by the act of the trial judge in cross-examining a defendant. See Brown v. Commonwealth, 335 Mass. 476, 483, 140 N.E.2d 461, 465.
 
 
 16
 But the privilege against self-incrimination is one which may be waived (Hashagen v. United States, 9 Cir., 283 F.2d 345), and such a waiver occurs when a defendant elects voluntarily to testify. Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054. Examination of the trial record indicates that Redfield persistently testified, though not under oath, throughout his trial. He did this voluntarily while purporting to act in the role of counsel, and in flagrant and contemptuous disregard of repeated admonitions and orders from the bench not to testify without first being sworn.
 
 
 17
 It was in what proved to be a fruitless effort to prevent Redfield from giving unsworn testimony at a time when he was serving as his own counsel in making argument or examining witnesses, that the trial judge made the remark and suggestions which Redfield now asserts violated his privilege. It was long after Redfield in this manner had waived his privilege that the judge cross-examined Redfield while the latter was cross-examining a witness. That cross-examination, moreover, was actually in the nature of a colloquy between court and counsel in an effort on the part of the court to clarify the testimony of the sworn witness then on the stand.[3]
 
 
 18
 We hold that Redfield's privilege against self-incrimination was not violated.
 
 
 19
 As before stated, the second reason advanced by Redfield why the section 2255 motion should have been granted is that counts 5, 6 and 7 state no offenses not encompassed in counts 1, 2 and 3. Accordingly, it is argued, not only are the sentences under counts 5, 6 and 7 illegal, but such illegality pervades the entire case, requiring a complete reversal. This same contention is made in Redfield's alternative Rule 35 motion made in the Nevada proceedings.
 
 
 20
 The terms of imprisonment on all six counts were made concurrent. Thus if the sentences on counts 5, 6 and 7 were set aside, Redfield would still not be entitled to his release. Section 2255 may be invoked only by those "claiming the right to be released." Bayless v. United States, 9 Cir., 288 F.2d 794, 795. While the fines imposed were cumulative, this is immaterial insofar as a section 2255 proceeding is concerned because it is not contended that elimination of the fines imposed under counts 5, 6 and 7 would entitle Redfield to immediate release.
 
 
 21
 The question remains whether the contention now under discussion was properly raised in the alternative motion under Rule 35, Federal Rules of Criminal Procedure.
 
 
 22
 The contention under discussion is primarily predicated on the argument that the convictions under counts 5, 6 and 7 were invalid. Rule 35, however, presupposes a valid conviction. Smith v. United States, 9 Cir., 287 F.2d 270. Its only function is to permit correction of an illegal sentence, not to reëxamine other proceedings prior to the imposition of sentence. Hill v. United States, 368 U.S. 424, 430, 82 S.Ct. 468, 7 L.Ed.2d 417. It follows that Rule 35 is not available to Redfield as a means of setting aside the sentences under counts 5, 6 and 7 on the ground that he was not validly convicted on those counts.
 
 
 23
 But there inheres in appellant's general position, although it is not expressly stated, the further argument that even if the convictions on counts 5, 6 and 7 are valid, the doctrine of merger of offenses precludes the imposition of sentences thereon additional to those imposed under counts 1, 2 and 3. A Rule 35 proceeding is an appropriate means of dealing with such a question.[4]
 
 
 24
 The facts necessary to be considered in deciding that question are of record in the appeal from the conviction. Redfield was responsible for the preparation of the separate returns of himself and his wife. Both his returns and those of his wife were based upon computations in which all income was considered to be community income under the community property law of Nevada. See N.R.S. 123.220. For each year, 1953, 1954 and 1955, the return of Redfield and that of his wife were identical, item for item, except that for 1954, Redfield indicated in his amended return a $100,000 miscellaneous loss, and for 1955, he indicated a miscellaneous loss of $50,000.
 
 
 25
 The evidence submitted by the Government, which led to Redfield's conviction on the six counts, showed that he failed to report substantial amounts of dividends, interest, and gains on the sale of securities. This income was received in his own name, in the maiden name of his wife, Nell R. Jones, and in the names of ten nominees. The latter were friends, business associates, or relatives of Redfield. It was also shown that Redfield understated his gain on the sales of securities which he did report on the income tax returns of himself and his wife. The unreported and understated income was proved specifically, item by item, and no indirect method of proof, such as net worth computation, was used.[5]
 
 
 26
 All of the income which was or should have been reported was community income under the laws of Nevada. Redfield made all of the computations for 1953, and most of the computations for 1954 and 1955, before preparing the separate returns. His intent wilfully to evade income taxes was therefore formulated with regard to the entire community income, and was effectuated by computations which could have as well been reflected in a joint return as in separate returns. Had the Redfields filed joint returns, only one sentence could have been imposed against Redfield for each year.
 
 
 27
 While the income was community property, each spouse had a present, existing and equal interest in it and could divide and report it in separate returns. 26 U.S.C. § 6012; Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239. In filing separate returns Redfield and his wife in effect accomplished a segregation of community income into separate ownerships for income tax purposes.
 
 
 28
 This had tax advantages for Redfield because he would have been jointly and severally liable for all of the tax if a joint return had been filed. 26 U.S.C. § 6013(d) (3); Furnish v. Commissioner of Internal Revenue, 9 Cir., 262 F.2d 727, 731. But, by filing separate returns, Redfield escaped personal liability on his wife's share of the community income. Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58; Harrold v. Commissioner of Internal Revenue, 22 T.C. 625.
 
 
 29
 Moreover, to prove its case against Redfield with regard to the wife's separate returns, the Government had to establish a fact that it would not have had to prove had there been joint returns. This is the fact that Redfield contributed consciously to the attempted evasion of Mrs. Redfield's taxes for the years in question. For the years 1954 and 1955 there is the added factor that Redfield included sizable amounts for "miscellaneous loss" which had no counterpart in his wife's returns for those years.
 
 
 30
 The fact that Redfield could have escaped the double penalty by filing joint returns seems to us, under these circumstances, immaterial. By analogy, one who transports two women at the same time in the same vehicle across a state line in violation of the Mann Act, has committed only one violation. Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905. But if he chooses to transport them across the state line in different vehicles or on different days, two violations are committed. This is true notwithstanding the fact that both transactions may have resulted from a previously formulated intent to transport two women across the line.
 
 
 31
 All of the considerations referred to above lead us to conclude that, by reporting the income in separate returns, separate transactions were brought into existence, each of which is subject to the penalty prescribed for the violation of sections 145(b) and 7201.
 
 
 32
 This brings us to the third reason advanced by Redfield why the section 2255 motion should have been granted. As stated above, this ground is that counts 5, 6 and 7 actually state offenses under 26 U.S.C. § 7207, 1954 Internal Revenue Code, and the lesser penalties there prescribed should have been imposed.[6]
 
 
 33
 For the reasons previously stated in this opinion, this question may not be entertained under appellant's section 2255 motion, but may be considered under his alternative motion under Rule 35.
 
 
 34
 In Achilli v. United States, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918, it was held that section 3616(a), 1939 Internal Revenue Code, is not applicable to income tax evasion offenses deflned in section 145(b) of that Code. In Janko v. United States, 8 Cir., 281 F.2d 156, 164-167, it was held that section 7207 of the 1954 Code was not significantly different from its antecedent, section 3616(a) of the 1939 Code, and that the rule of the Achilli case was therefore applicable with respect to the interrelationship between sections 7201 and 7207 of the 1954 Code.
 
 
 35
 We agree, and accordingly hold that section 7207 does not apply under the circumstances of this case. The imposition of the heavier penalty prescribed in section 7201 was therefore proper.
 
 
 36
 This disposes of all issues raised in the Nevada appeal — No. 18167.
 
 
 37
 We now turn to the California appeal — No. 18168. As before stated, the only ground relied upon in the application for a writ of habeas corpus filed in the United States District Court for the Southern District of California, was the same self-incrimination question raised in the Nevada section 2255 proceeding. After oral argument following the filing of a return to an order to show cause, the California District Court denied the application. It did so on the ground that the application was based solely upon issues already decided by this court and the Supreme Court on Redfield's appeal from his conviction.
 
 
 38
 Redfield argues here that the California District Court erred in denying the application for habeas corpus on this ground, and asserts that the application should have been granted. Appellee joins issue on these contentions. It also advances the argument that the California court should not have entertained the application in view of the last paragraph of 28 U.S.C. § 2255, quoted in the margin.[7] Appellee argues that the action of the Nevada District Court in denying appellant's motion for a new trial, affirmed on the appeal from the conviction, constitutes a denial of relief by the sentencing court within the meaning of the quoted provision of section 2255.
 
 
 39
 The denial of relief by the sentencing court, referred to in the last paragraph of section 2255, is the denial of relief in a section 2255 proceeding. This provision, therefore, did not operate to prevent Redfield from raising, by habeas corpus, issues which were resolved against him at the trial and appeal from the judgment of conviction.[8]
 
 
 40
 But Redfield thereafter commenced the Nevada section 2255 proceeding dealt with above, and there raised the self-incrimination question, and relief was denied. Under the quoted paragraph of section 2255, this foreclosed any remedy by habeas corpus unless it appears that the remedy by a section 2255 motion "is inadequate or ineffective to test the legality of his detention."
 
 
 41
 Redfield has not maintained his burden of showing that his section 2255 remedy was inadequate or ineffective, nor have we discerned any reason why it should be so regarded. The fact that relief has been denied in a section 2255 proceeding does not constitute a showing that such remedy is inadequate or ineffective, unless such denial was on the ground, affirmed on appeal, that section 2255 is not an available remedy. Williams v. United States, 10 Cir., 283 F.2d 59. Here, no such showing was or could be made.
 
 
 42
 It follows that the District Court in California did not have jurisdiction to entertain the application for a writ of habeas corpus and accordingly it did not err in denying that application.
 
 
 43
 The judgments in Nos. 18167 and 18168 are affirmed.
 
 
 
 Notes:
 
 
 [1]
 The statutes alleged to have been violated are section 145(b), Internal Revenue Code of 1939, for the year 1953, and the almost identical 26 U.S.C. § 7201, Internal Revenue Code of 1954, for the years 1954 and 1955
 
 
 [2]
 The applicable clause of the Fifth Amendment reads: "* * * nor shall [he] be compelled in any criminal case to be a witness against himself * * *."
 
 
 [3]
 Redfield had rejected repeated offers to provide court-appointed counsel and thus elected to assume the dual role of defendant and counsel
 
 
 [4]
 Bayless v. United States, 9 Cir., 288 F.2d 794, 795; Reynolds v. United States, 5 Cir., 288 F.2d 78. See, also, Heflin v. United States, 358 U.S. 415, 418, 79 S. Ct. 451, 3 L.Ed.2d 407
 
 
 [5]
 According to the Government's evidence, the income tax sought to be evaded on the returns of himself and his wife was $10,579.72 for 1953, $149,609.32 for 1954, and $175,900.54 for 1955
 
 
 [6]
 Section 7207 reads as follows:
 "Any person who willfully delivers or discloses to the Secretary or his delegate any list, return, account, statement, or other document, known by him to be fraudulent or to be false as to any material matter, shall be fined not more than $1,000, or imprisoned not more than 1 year, or both."
 
 
 [7]
 "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."
 
 
 [8]
 Moreover, as noted earlier in this opinion, Redfield did not raise the self-incrimination question on his motion for a new trial