**UNITED STATES of America ex rel. Danton S. MILLER, Petitioner,**

**v.**

**Harold W. FOLLETTE, as Warden of Green Haven State Prison, Stormville, New York, Respondent.**

**No. 67 C 996.**

United States District Court
E. D. New York.

Jan. 6, 1968.

James J. McDonough, Legal Aid Society of Nassau County, New York Criminal Division, Mineola, N. Y., for petitioner; Matthew Muraskin, Mineola, N. Y., Francis J. Valentino, Kew Gardens, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, for respondent; Michael H. Rauch, Asst. Atty. Gen., of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Petitioner was convicted of possessing burglar's instruments and sentenced as a third felony offender after a jury trial. During his trial, he insisted on acting as his own attorney. He now seeks release from a state prison by writ of habeas corpus (28 U.S.C. § 2241) on the ground that he was deprived of due process of law by the prosecutor's references to his failure to testify and by unfair comment on the inferences to be drawn from his choosing to appear pro se.

The transcript of defendant's trial in Nassau County Court suggests the difficulties a defendant who refuses the aid of counsel can create for himself despite all the efforts of a trial judge struggling to insure a fair trial. Pro se appearances put a strain on the adversarial system. We assume that the lawyer's urge to win for his client will be tempered by knowledge of the rules of litigation, ethical obligations of truth and fairness, and a degree of objectivity and perspective. None of these characteristics can be expected of criminal defendants. As a result, some rules designed for litigation conducted by attorneys tend to break down where a litigant defends

himself against the state, represented by a prosecutor.

So it was in this case. That the prosecutor uttered words he would have preferred to choke back into silence is clear. That, under the circumstances, the defendant lost nothing seems equally certain. No constitutional right was violated at this trial.

The fact that a layman, who would be directly affected by the result, was trying the case created several special problems. First, petitioner tended to unnecessarily extend cross-examination by repeating questions and by dwelling on irrelevant matters. In cutting him short, the court acted with particular circumspection so that its treatment of petitioner as counsel would not influence the jury's view of petitioner as defendant. Second, both the court and the prosecution, in addition to filling their normal roles at the trial, felt called upon to render extra assistance to petitioner in presenting his case to the jury. Third, the court had to act as primary guardian of petitioner's constitutional rights lest he unwittingly waive them. Finally, both court and prosecutor had to maintain equanimity and perspective in the face of petitioner's sometimes exasperating behavior. A few examples from the record suggest the difficulties.

The crime with which petitioner was charged, possession of burglar's tools, was a felony only if committed by a person previously convicted of a "crime." Thus, it became necessary for the defendant either to admit his prior conviction out of the presence of the jury or to put the prosecution to its proof before the jury. Both the court and prosecution were patient and clear in explaining the alternatives and their possible prejudicial consequences.

Seeking to clarify the record, the court asked petitioner a question during his cross-examination of the arresting officer which called for a testimonial answer. The prosecuting attorney alerted the court to the possible waiver of "certain constitutional provisions." Thereupon, the court specifically warned petitioner of the danger of waiver inherent in the court's question and apologized.

While cross-examining a police officer, petitioner nearly forced the witness to disclose that petitioner had a prior conviction. The court stopped the inquiry, advising petitioner outside the hearing of the jury of the tactical dangers involved.

In the face of a compelling record—583 pages long—of fair play by court and prosecutor, petitioner culls from the transcript two isolated remarks in an attempt to invalidate his conviction.

## COMMENTS ON APPEARANCE PRO SE

The claim that the Assistant District Attorney's comment on the inferences to be drawn from petitioner's decision to defend himself was improper may be quickly disposed of. The language objected to in the prosecution's summation reads as follows:

"I submit to you with all sincerity that justice requires a conviction in this case, that justice requires it because he has attempted to obstruct the minds of this court record with respect to a course of conduct, which if he is successful, I submit to you will be a disgrace and a blot on this community. He has done everything from attack the DA to the Court to the witnesses to his own counsel, who have come in here and attempted to help him."

■■ There is no doubt that petitioner has a constitutional right to defend himself. United States v. Plattner, 330 F.2d 271 (2d Cir. 1964). See also United States ex rel. Maldonado v. Denno, 348 F.2d 12 (2d Cir., 1965), cert. denied, sub nom. DiBlasi v. McMann, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966) (there must be an unequivocal request to defend pro se in order to make denial of the right reversible error). Whether adverse comment on the exercise of this right is as significant as comment on failure to take the stand, is a matter we need not decide. Cf. Griffin

v. State of California, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

■ It is highly doubtful that the jury could have interpreted the prosecutor's remarks as adverse comment on petitioner's acting as his own counsel. Petitioner did not object to prosecutor's summation at trial, suggesting that the statement of the prosecutor was not, in context, prejudicial. Moreover, any possibility of prejudice to petitioner was eliminated by the court's instructions at the time petitioner discharged his counsel and in its charge to the jury. After petitioner decided to represent himself the court declared:

> "[H]e has a perfect right to do so. You may not draw any inferences favorable or unfavorable against the defendant for doing this. Under the law he has a perfect right to represent himself, and to discharge his lawyer, and you may not hold anything against him for that reason. * * *"

The court also made clear beyond cavil that defendant's errors as counsel should not be considered in determining guilt or innocence. On that score, he stated:

> "[Y]ou will pay attention to him and forgive him any sins that he may commit because he doesn't know the technical rules. We will try to help him with the technical rules, but pay close attention to him as though he were a lawyer in the case. Of course that is not to say that you should favor him. At the same time he is not to be prejudiced by the fact that he has dispensed with the services of his lawyer. His lawyer will sit in and give him such advice on matters of law as may come up from time to time."

Much the same language was used by the court in its charge.

### COMMENT ON FAILURE TO TAKE STAND

The objection that the prosecutor unfairly commented on petitioner's failure to take the stand is more troublesome. The language in the summation was:

> "We have a unique situation here of a defendant who has represented himself and who has made statements which are not evidence and which put me on the horns of a dilemma because if a district attorney comments in some way in summation upon the failure of someone to take the stand, that is reversible error. So all I can say to you is please listen to the Judge's admonition. It is what you hear from the people up there on the stand, that is what the evidence is."

Reasonably read, the quoted language constitutes comment on defendant's failure to testify. Even if we assume that, in the circumstances of this case, such comment was error, it was not of sufficient weight to render petitioner's conviction and imprisonment "contrary to fundamental law"—the standard that must be met to obtain release on habeas corpus. Fay v. Noia, 372 U.S. 391, 408, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Without taking the stand, petitioner persistently used his position as attorney to make unsworn statements of fact. In large part, these statements in question form were appropriate cross-examination, but they took on testimonial color because it was defendant rather than his lawyer who was inquiring.

Before he summed up, petitioner received an explicit warning not to testify or comment on matters not in evidence. Despite this warning, petitioner utilized his summation to testify to the following matters: the allegedly deliberate and malicious lies of the prosecution; details of his personal life; the dismissal of an earlier information; and the fact that the tools he was found with "were not burglar's tools." There were, petitioner told the jury, "no burglar tools in my car." In effect, petitioner was telling the jury, "I am innocent; I did not intend to use these tools as burglar's instruments." Although made in summation rather than under oath and subject to cross-examination, such statements were testimonial in character.

■ Even though the trial court attempted to avoid it, there was a clash

in this case between the right of a defendant to appear for himself and the constitutional privilege against self-incrimination. For our purposes that privilege can be analyzed into three components: (1) the right of a witness not to incriminate himself; (2) the right of a defendant in a criminal trial not to take the witness stand at all; and (3) the right of such a defendant not to have his failure to take the stand commented upon. The first two have long been recognized by all our states. The third was recently added to the catalogue of constitutional rights binding on the states. Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

 None of these three rights may be violated. But we have been taught by the Supreme Court that the privilege against self-incrimination—important as it is—is not absolute. It must yield to some practical considerations and be subject to compromise where other important interests conflict. Thus, immunity can be granted and the witness required to divulge incriminating information. Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896). Cf. Stevens v. Marks, 383 U.S. 234, 243, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966). Moreover, the advantage to a witness or defendant of the privilege has been somewhat limited by a policy of automatic "waiver." If the witness gives some incriminating evidence, or the defendant takes the stand, the cases hold he has lost the privilege's protection. See, e. g., Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951) (witness revealed some information); Raffel v. United States, 271 U.S. 494, 497, 46 S.Ct. 566, 568, 70 L.Ed. 1054 (1926) ("when [defendant] * * * takes the stand in his own behalf, he does so as any other witness * * *. His waiver is not partial; having once cast aside the cloak of immunity he may not resume it at will * * *."); Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917). See also Uniform Rules of Evidence, Rule 37 ("no such privilege if * * * he * * * made disclosure of any part"); VIII Wigmore, Evidence § 2276 at pp. 456–471 (McNaughten Rev. 1961). But cf. Miranda v. State of Arizona, 384 U.S. 436, 473–474, 86 S.Ct. 1602, 16 L.Ed.2d 694; id. at 500, 505, 516–517, 86 S.Ct. at 1641, 1649–1650 (dissent) (waiver may be discontinued at any time during interrogation by the police).

The law is presented with a dilemma. On the one hand, permitting defendant to defend himself without benefit of a lawyer's skills and objectivity may lead him to make statements which can be construed as a total waiver of his privilege against self-incrimination, exposing him to being called by the state. On the other, were defendant allowed to give, what is for all practical purposes, testimony without being subject to some check, the jury might be misled. Faced with such undesirable alternatives, the law seeks a middle ground which accommodates the essence of the opposing interests while furnishing maximum protection to all concerned.

 Treating the unsworn testimonial statement of the defendant as a partial waiver of the third aspect of the privilege against self-incrimination provides a practical solution. The prosecution can then be permitted to comment that the defendant's statements were not given under oath while he was subject to cross-examination and that they are, therefore, less weighty than sworn testimony. The constitutional privilege of the criminal defendant appearing pro se would appear to be adequately protected were he given a clear and direct warning by the court that such limited comment might follow if he continued to give what amounted to unsworn testimony.

Though obviously not controlling, the practice in Georgia when criminal defendants made permissible unsworn statements to the jury which were not subject to cross-examination, is instructive. Ga.Code § 38–415 (amended in 1962). The price which the defendant

paid for the opportunity of making such a statement was that the court and prosecutor could comment that the statement was not under oath, not subject to the rigors of cross-examination, and not subject to the sanction of a prosecution for perjury. See, e. g., Williams v. State, 98 Ga.App. 346, 105 S.E.2d 771, 773 (1958) (proper for prosecutor to state in summation that defendant's statement was not under oath); Garrett v. State, 203 Ga. 756, 48 S.E.2d 377, 378 (1949) (proper for court to instruct jury that statements "are not under oath, not subject to cross-examination and you are authorized to give * * * just such weight and credit as you think them entitled to receive").

Cases in other states have held that when a defendant makes what are the equivalent of unsworn testimonial statements, his right not to have his failure to testify commented upon is relinquished. State v. Fioravanti, 46 N.J. 109, 114–121, 215 A.2d 16, 18–23 (1965), cert. denied, 384 U.S. 919, 86 S.Ct. 1365, 16 L.Ed.2d 440 (1966) (defendant waived rights under *Griffin* by voluntarily trying on pants allegedly seized from him, impliedly stating that his girth was unchanged and the pants were not his); State v. Mayer, 154 Wash. 667, 283 P. 195 (1929) (where defendant had a statutory right to an instruction that no inference was to be drawn from his failure to testify, the right was waived when defendant gave samples of his handwriting in the presence of the jury in order to prove that he had not written the draft of a telegram).

Despite the general federal rule of all or nothing waiver, a doctrine of partial waiver of the non-comment branch of the privilege is not foreclosed. Some amelioration of the harsh waiver doctrine has been accepted. For example, relevance and scope of cross-examination have long provided some limitations on waiver. See, e. g., Tucker v. United States, 5 F.2d 818 (8th Cir. 1925); Uniform Rules of Evidence, Rule 25(g); VIII Wigmore, Evidence § 2276 at pp. 465–68 (McNaughten Rev.1961). Cf.

Note, 45 No.Car.L.Rev. 1030 (1967) (suggesting that *Griffin* makes the federal rule of limited cross-examination applicable to the states). Recent cases have approved the practice of permitting the defendant to take the stand for special purposes without waiving his privilege. See, e. g., United States ex rel. Gomino v. Maroney, 231 F.Supp. 154, 156 (W.D.Pa. 1964) (limited testimony as to influence of drugs at time of alleged admission may not constitute waiver of privilege). Moreover, a waiver at one stage of a proceeding or in one trial does not constitute a waiver in another. See, e. g., Grunewald v. United States, 353 U.S. 391, 421–424, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) (defendant's waiver of privilege at trial does not give prosecutor the right to comment on his earlier failure to testify before the grand jury); United States v. Miranti, 253 F.2d 135 (2d Cir. 1958) (voluntary appearance at first grand jury session did not waive privilege in separate grand jury session). See also People v. Williams, 25 Ill.2d 562, 185 N.E.2d 686, 687 (1962) (Schaefer, J.) ("As to her testimony, it was offered in support of her motion to suppress, and it was a waiver of her privilege against self-incrimination only with respect to the legality of the search. The effect of her testimony, therefore, was limited to that issue.").

Despite the desirability of a rule permitting limited comment, the Court of Appeals for the Second Circuit has used language appearing to reject it. In a situation similar to that in the present case, it wrote:

" 'We are not impressed with the argument that the conduct of the prosecutor was caused by the conduct of defense counsel. A prosecutor should be immune to improper tactics. If he feels that his opponent has overstepped, the remedy is an appeal to the trial court—not in the adoption of unfair procedures.' Dugan Drug Stores, Inc. v. United States, 326 F.2d 835, 837 (5 Cir. 1964)." United States v. Curtiss, 330 F.2d 278, 281 (2d Cir. 1964).

Judge Medina dissented, declaring:

"We have come to a pretty pass if, acting as his own lawyer, a defendant in a criminal case can go ahead and say as a lawyer the things he could have testified to in his own defense, and then accuse the prosecutor of violating his Fifth Amendment rights when the prosecutor tells the jury not to believe him, but rather to render their verdict on the testimony given under oath by the witnesses who did testify." 330 F.2d at 287.

The *Curtiss* case can be distinguished from the one before us on two grounds. It involved a defendant who, unlike petitioner, was forced by the trial judge to manage his defense. The opinion suggests that this ground alone was probably enough to require reversal. In any event, the majority relied upon the "totality of error" (id. at 279), noting:

"[e]ven if some doubt exists on the question whether defendant effectively waived his right to counsel, the judgment must be reversed because of improper statements made during the government's summation, *which take on special significance where, as here, the defendant has acted as his own attorney.*" Id. at 281 (emphasis added).

Moreover, *Curtiss* involved an appeal from a federal conviction. The Court emphasized at the outset that the case involved a "federal criminal trial." Id. at 279. It was decided over a year before the Supreme Court made the federal rule on adverse comment binding on the state and the decision might well have been based upon the power to control federal courts and federal prosecutors rather than upon constitutional grounds applicable to a habeas corpus proceeding attacking a state conviction. Cf. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

The Ninth Circuit has taken a position opposite to that of the Second Circuit. It held that a defendant in a federal prosecution loses his right not to have his failure to take the stand commented upon by employing tactics such as those used by petitioner. Redfield v. United States, 315 F.2d 76, 80 (9th Cir. 1963) (ruling on motion to set aside sentence); Redfield v. United States, 295 F.2d 249 (9th Cir. 1961), cert. denied, 369 U.S. 803, 82 S.Ct. 642, 7 L.Ed.2d 550 (1962) (ruling on direct review). See also Smith v. United States, 234 F.2d 385, 389, 393 (5th Cir. 1956) (where defendant, appearing pro se argues with witnesses whom he is cross-examining, it is proper for the court to state "[i]f you want the jury to consider what you have to say * * * you ought to testify * * * take the witness stand and testify and be subject to cross-examination"); Note, 38 Temple L.Q. 102 (1964) (criticizing *Curtiss* and approving *Redfield*). The decision in *Curtiss* does not seem to be controlling in this habeas corpus proceeding.

■■■ The trial court's action in the present case conformed to the principles outlined above. After petitioner made repeated unsworn testimonial statements, he was warned that continuing to do so would cause the court "to make a ruling in front of the jury * * * that sounds five times worse for you." Although these words did not constitute an explicit warning of a possible partial waiver of the right to be free of adverse comment, under the circumstances they adequately conveyed the meaning to petitioner. When petitioner ignored the warning, the prosecutor commented that it was the witnesses who testified under oath who were to be believed, and not petitioner.

## HARMLESS ERROR

Even assuming that the Second Circuit ruling in *Curtiss* is applicable, in the context of the record, there was no prejudicial error. Not only did petitioner—advised by counsel sitting next to him—fail to object to any part of the prosecution's summation, but he himself called attention to his failure to take the stand. During his summation he declared:

"Incidentally, it seems to me usually a bad policy to make reference to

things that you would like to avoid. Many of you may be asking yourselves why didn't I take the stand. Why didn't I explain what my side of the story would be. Well, you see, I don't have to. The law doesn't read that way, as I understand it. The Judge, I feel, should have informed you earlier that it goes something like this: The person who is charged with a crime is always innocent at all times. It is not his problem. It is not his responsibility in any manner or form to show you gentlemen that he is innocent. He doesn't have to do that. It is up to Mr. Clavin [the prosecutor] to prove beyond a reasonable doubt that I am guilty of the charge."

Subsequently he noted:

"I am just merely saying that those tools were not burglar's tools. These tools, assuming, sir, we must assume, *I didn't take the stand so I cannot deny ownership of certain of those tools, incidentally.*" (Emphasis added.)

Since it was petitioner who emphasized the point to the jury and the prosecutor made only a veiled reference to his failure to take the stand, the trial court's instructions prevented any possible prejudice. The court's instructions to the jury were: "The defendant doesn't have to take the stand and you must not draw any inference from the fact that he didn't take the stand."

▇▇▇ Petitioner argues that an error depriving him of a federal constitutional right cannot be harmless. This contention has been specifically rejected by the Supreme Court. In Chapman v. State of California, it declared, "We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful * * *. We decline to adopt any such rule." 386 U.S. 18, 21–22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705. (1967). An error is prejudicial only if "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." 386 U.S. at 23, 87 S.Ct. at 827 (language quoted from Fahy v. State of Connecticut, 375 U.S. 85, 86, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)).

The record in this case provides ample assurance that the prosecutor's isolated remark did not contribute to the conviction. Neither considered by itself nor in connection with the comment on petitioner's choice to defend himself could this incidental language of the prosecutor be construed to have denied him a fundamentally fair trial.

The petition is in all respects denied. So ordered.