397 F.2d 363
 UNITED STATES of America ex rel. Danton S. MILLER, Relator-Appellant,
v.
Harold W. FOLLETTE, as Warden of Green Haven State Prison, Stormville, New York, Respondent-Appellee.
 No. 522.
 Docket 32108.
 United States Court of Appeals Second Circuit.
 Argued June 5, 1968.
 Decided June 28, 1968.
 
 Francis J. Valentino, Mineola, N. Y. (James J. McDonough, Legal Aid Society of Nassau County, Matthew Muraskin, Mineola, on the brief), for relator-appellant.
 Michael H. Rauch, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.
 Before WATERMAN and FEINBERG, Circuit Judges, and ZAMPANO, District Judge.*
 FEINBERG, Circuit Judge:
 
 
 1
 Appellant Danton S. Miller is now serving a sentence of four to fourteen years in a state prison. After a jury trial in the County Court, Nassau County, in which Miller represented himself, he was convicted of possession of burglar's tools, and was sentenced as a third felony offender.[1] Miller appeals from denial of his petition for a writ of habeas corpus by the United States District Court for the Eastern District of New York, Jack B. Weinstein, J. Although denying the writ, the district court issued a certificate of probable cause under 28 U.S.C. § 2253. Thereafter, this court granted leave to appeal in forma pauperis under 28 U.S.C. § 1915, and assigned counsel.[2] For reasons given below, we affirm.
 
 
 2
 Appellant claims that he was denied due process in the state trial by two comments of the prosecutor, one referring to Miller's failure to testify and the other to his decision to appear pro se. Judge Weinstein carefully considered both arguments. As to the former, he ruled that Miller's repeated unsworn testimonial statements operated as a partial waiver of his right to have no comment on his failure to take the stand. Alternatively, the judge held that any error in either comment of the prosecutor was harmless. United States ex rel. Miller v. Follette, 278 F.Supp. 1003 (E.D.N.Y. 1968).
 
 
 3
 On the first issue, the comment complained of occurred early in the prosecutor's summation. After pointing out some of the difficulties he had labored under, the prosecutor stated:
 
 
 4
 We have a unique situation here of a defendant who has represented himself and who has made statements which are not evidence and which put me on the horns of a dilemma because if a district attorney comments in some way in summation upon the failure of someone to take the stand, that is reversible error. So all I can say to you is please listen to the Judge's admonition. It is what you hear from the people up there on the stand, that is what the evidence is. (Emphasis added.) Relying on Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and United States v. Curtiss, 330 F.2d 278 (2d Cir. 1964), appellant claims that this was a comment on his failure to testify, which required the grant of the writ.
 
 
 5
 In Griffin, the Supreme Court forbade adverse comment by prosecutor and judge on the failure of a defendant to testify in a state criminal trial. In that case, defendant apparently was represented at trial by counsel, the prosecutor in summation made much of defendant's failure to testify,[3] and the judge charged the jury, inter alia, that defendant's failure to testify could justify an unfavorable inference in certain circumstances.[4] The facts in this case are obviously different.
 
 
 6
 A more analogous situation, however, was presented to a panel of this court in Curtiss, although the language used by the prosecutor was much more inflammatory and direct. Over a vigorous dissent by Judge Medina, we stated there, 330 F.2d at 281:
 
 
 7
 Appellant's summation as his own attorney did not constitute a waiver of his Fifth Amendment protection. Nor could it be used as an excuse to disregard the admonition against "comment or argument about his failure to testify."
 
 
 8
 Since our decision in Curtiss, the Ninth Circuit has adopted the view that the actions of a defendant representing himself, who "persistently testified, though not under oath, throughout his trial," waived his privilege against self-incrimination. Redfield v. United States, 315 F.2d 76, 80 (9th Cir. 1963). Accord, State v. Schultz, 46 N.J. 254, 216 A.2d 372, cert. denied, 384 U.S. 918, 86 S.Ct. 1367, 16 L.Ed.2d 439 (1966).[5]
 
 
 9
 This court has not since addressed itself to this aspect of the thorny problems raised by a pro se defendant who repeatedly engages in improper conduct. For there is no doubt that such was Miller's course here. As Judge Weinstein stated, 278 F.Supp. at 1006:
 
 
 10
 Without taking the stand, petitioner persistently used his position as attorney to make unsworn statements of fact. In large part, these statements in question form were appropriate cross-examination, but they took on testimonial color because it was defendant rather than his lawyer who was inquiring.
 
 
 11
 Before he summed up, petitioner received an explicit warning not to testify or comment on matters not in evidence. Despite this warning, petitioner utilized his summation to testify to the following matters: the allegedly deliberate and malicious lies of the prosecution; details of his personal life; the dismissal of an earlier information; and the fact that the tools he was found with "were not burglar's tools." There were, petitioner told the jury, "no burglar tools in my car." In effect, petitioner was telling the jury, "I am innocent; I did not intend to use these tools as burglar's instruments."
 
 
 12
 The judge pointed out that the privilege against self-incrimination is not absolute; e. g., if immunity is granted, incriminating information must be divulged; if the defendant takes the stand, there is an automatic waiver. Judge Weinstein saw this dilemma, 278 F.Supp. at 1007:
 
 
 13
 On the one hand, permitting defendant to defend himself without benefit of a lawyer's skills and objectivity may lead him to make statements which can be construed as a total waiver of his privilege against self-incrimination, exposing him to being called by the state. On the other, were defendant allowed to give, what is for all practical purposes, testimony without being subject to some check, the jury might be misled. Faced with such undesirable alternatives, the law seeks a middle ground which accommodates the essence of the opposing interests while furnishing maximum protection to all concerned.
 
 
 14
 The answer furnished was to treat the defendant's unsworn testimonial statement, after a proper warning, as a waiver of his right to have no comment upon his failure to take the stand.
 
 
 15
 However, the language in Curtiss, quoted above, seems to reject such a rule, as the district judge recognized. He distinguished Curtiss on two grounds: It was a direct appeal from a federal conviction and therefore possibly based on federal supervisory powers rather than on constitutional grounds, and the defendant in Curtiss was improperly forced by the trial judge to manage his own defense.
 
 
 16
 We agree that Curtiss is distinguishable, but for another reason. In this case, shortly after he began his final argument to the jury, Miller stated:
 
 
 17
 Incidentally, it seems to me usually a bad policy to make reference to things that you would like to avoid. Many of you may be asking yourselves why didn't I take the stand. Why didn't I explain what my side of the story would be. Well, you see, I don't have to. The law doesn't read that way, as I understand it. The Judge, I feel, should have informed you earlier that it goes something like this: The person who is charged with a crime is always innocent at all times. It is not his problem. It is not his responsibility in any manner or form to show you gentlemen that he is innocent. He doesn't have to do that. It is up to Mr. Clavin to prove beyond a reasonable doubt that I am guilty of the charge. [Emphasis added.]
 
 
 18
 Shortly thereafter, Miller made a statement about a matter not in evidence. The trial judge stopped him, pointing out that "there is nothing of that in the evidence." The judge then asked the state prosecutor if he had any objection, to which the latter replied:
 
 
 19
 Judge, let me say I have a problem with respect to objecting and with respect to not objecting. For me to answer something he says, I am on the horns of a dilemma, I don't know what to do.
 
 
 20
 I believe you have instructed the jury that they are not to consider anything that was not in evidence and I don't believe there was any evidence with respect to that particular subject.
 
 
 21
 Within the next few minutes, the defendant then said to the jury:
 
 
 22
 I am just merely saying that those tools were not burglar's tools. Those tools, assuming, sir, we must assume, I didn't take the stand so I cannot deny ownership of certain of those tools, incidentally. [Emphasis added.]
 
 
 23
 It was after this had occurred that the prosecutor made the remarks which are the subject of this appeal.
 
 
 24
 Thus, defendant twice called to the attention of the jury his failure to take the stand, and at least once told them why. That did not occur in Curtiss; the prosecutor there, albeit by inference, affirmatively injected into the jury's consideration the defendant's failure to testify. It is in that context that we must read the broad comment in Curtiss that "Appellant's summation as his own attorney did not constitute a waiver of his Fifth Amendment protection." Had appellant in this case not referred to his failure to take the stand, we would be faced with the question of whether Curtiss should be reconsidered. But on these facts, we need not again consider the broad issue of whether improper pro se argument, which amounts to testifying, operates as a waiver. Here, appellant did more than that; he emphasized himself that he had not taken the stand. At that point, the jury was obviously so informed. When the prosecutor thereafter repeated that he was "on the horns of a dilemma" because he was not allowed to comment further upon that fact, no further damage was done. Under those circumstances, to regard the prosecutor's restrained remark as an error of constitutional proportions would glorify technicality. Cf. e.g., United States ex rel. Castillo v. Fay, 350 F.2d 400, 401 (2d Cir. 1965), cert. denied, 382 U.S. 1019, 86 S.Ct. 637, 15 L.Ed.2d 533 (1966). And we agree with the district judge that if error there was in this one comment in an eminently fair trial which lasted almost a week, it was "harmless."[6]
 
 
 25
 The remaining argument on appeal requires little discussion. Toward the end of the prosecutor's summation, he stated:
 
 
 26
 I submit to you with all sincerity that justice requires a conviction in this case, that justice requires it because he has attempted to obstruct justice. He has attempted to becloud your minds and the minds of this court record with respect to a course of conduct, which if he is successful, I submit to you will be a disgrace and a blot on this community. He has done everything from attack the DA to the Court to the witnesses to his own counsel, who have come in here and attempted to help him. [Emphasis added.]
 
 
 27
 Appellant argues that the italicized language was an unfair comment upon his choice to act as his own counsel at trial. The district court pointed out that it was "highly doubtful" that the jury would so construe the remark, cf. United States ex rel. D'Ambrosio v. Fay, 349 F.2d 957, 961 (2d Cir.), cert. denied, 382 U.S. 921, 86 S.Ct. 301, 15 L.Ed.2d 235 (1965), that petitioner did not object, and that the court's instructions to the jury at the time petitioner discharged his counsel[7] and later in the charge prevented any prejudice. We agree.
 
 
 28
 Judgment affirmed.
 
 
 
 Notes:
 
 
 *
 Of the District of Connecticut, sitting by designation
 
 
 [1]
 The conviction was unanimously affirmed without opinion, 28 A.D.2d 647, 282 N. Y.S.2d 444 (1967); leave to appeal was denied by Judge Fuld in June 1967
 
 
 [2]
 Appellate counsel also represented Miller in the district court
 
 
 [3]
 E.g., the prosecutor stated:
 The defendant certainly knows whether Essie Mae had this beat up appearance at the time he left her apartment and went down the alley with her.
 What kind of a man is it that would want to have sex with a woman that beat up if she was beat up at the time he left?
 He would know that. He would know how she got down the alley. He would know how the blood got on the bottom of the concrete steps. He would know how long he was with her in that box. He would know how her wig got off. He would know whether he beat her or mistreated her. He would know whether he walked away from that place cool as a cucumber when he saw Mr. Villasenor because he was conscious of his own guilt and wanted to get away from that damaged or injured woman.
 These things he has not seen fit to take the stand and deny or explain.
 And in the whole world, if anybody would know, this defendant would know.
 Essie Mae is dead, she can't tell you her side of the story. The defendant won't.
 Griffin v. State of California, 380 U.S. at 610-611, 85 S.Ct. at 1231.
 
 
 [4]
 The charge, in part, was:
 As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable.
 Id. at 610, 85 S.Ct. at 1230.
 
 
 [5]
 See 38 Temple L.Q. 102 (1964), criticizingCurtiss and approving Redfield.
 
 
 [6]
 After the summations, the state trial judge charged the jury:
 The defendant doesn't have to take the stand and you must not draw any inference from the fact that he didn't take the stand.
 Even if not requested by a defendant, in this circuit such a charge would not be reversible error, although not the better practice. United States v. Garguilo, 310 F.2d 249, 252 (2d Cir. 1962); United States v. Woodmansee, 354 F.2d 235 (2d Cir. 1965) (per curiam).
 
 
 [7]
 Appellant discharged two different lawyers. The first time, a mistrial was declared; the second time, the judge allowed him to proceedpro se, but instructed assigned counsel to remain with Miller and advise him.